# SAMUEL & STEIN

ATTORNEYS AT LAW

1441 BROADWAY, SUITE 6085, NEW YORK, NY 10018
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | April 6, 2021 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Judith C. McCarthy, U.S.M.J.
United States District Court
Southern District of New York
300 Quarropas St., Courtroom 421
White Plains, NY 10601

      Re:    <u>**Argueta Palma., et al. v. J. Schenkman Landscape Contractors, Inc., et al.**</u>
               *Case Number 20-cv-6715 (JCM)*

Dear Magistrate Judge McCarthy:

      We represent named plaintiff Jose Argueta Palma and opt-in plaintiffs Wilson Hernandez and Edwin Argueta Pinto in the above-captioned matter and submit this letter to the Court with the consent of Zev Singer, Esq., counsel for defendants, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

      Mr. Argueta Palma filed his complaint in this matter on August 21, 2020. (The opt-in plaintiffs filed consent forms on December 31, 2020 and January 21, 2021, respectively.) The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for minimum wage, for spread of hours violations, for retaliation, for failure to provide wage notices and failure to provide wage statements. The plaintiffs who opted in assert similar claims, except that Mr. Hernandez does not assert any minimum wage or spread of hours claims, and neither claims to have been retaliated against.

      The parties all allege that they were employed by defendants as landscapers. Mr. Argueta Palma says that he worked for them from 2010 through 2017, and then again from June through August 2020; Mr. Hernandez claims that he worked for them from 2014 through 2017; Mr. Argueta Pinto's alleged dates of employment were from 2016 through 2018. (Mr. Argueta Palma and Mr. Argueta Pino claim seasonal work, while Mr. Hernandez says he was employed year round.)

They each allege that they worked substantial amounts of overtime — a 76-hour weekly schedule for Mr. Argueta Palma, 51½ hours per week for Mr. Hernandez, and 70 hours weekly for Mr. Argueta Pinto — but that they were paid weekly salaries with no overtime component. In 2017 and 2020 (for Mr. Argueta Palma) and 2018 (for Mr. Argueta Pinto), the salary combined with their lengthy work schedules allegedly led to wages below the New York state minimum wages in effect at the time. Plaintiffs state that they were paid in cash, though Mr. Argueta Palma began receiving checks after several years of employment; even when he received checks, those checks were not compliant with the Wage Theft Prevention Act because they did not list his hours on them. Moreover, plaintiffs state that they did not receive the wage notice required by the Wage Theft Prevention Act.

Based on these facts, plaintiffs calculated their estimated damages as follows, if they prevailed at trial on *all* of their claims: for Mr. Argueta Palma, about $40,000 in actual and liquidated overtime damages under the FLSA and NYLL (roughly $35,000 of which would be available only under the NYLL); $6,000 in actual and liquidated minimum wage damages under the NYLL; $4,000 for spread of hours damages, $7,000 for lost wages in retaliation damages, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs, for a total of $67,000. Mr. Hernandez would be owed about $25,000 in actual and liquidated overtime damages under the FLSA and NYLL (about $24,000 of which would be available only under the NYLL); and $10,000 for the Wage Theft Prevention Act violations, for a total of $35,000. Mr. Argueta Pinto would be owed about $32,000 in actual and liquidated overtime damages under the FLSA and NYLL (roughly $20,000 of which would be available only under the NYLL); $4,000 in actual and liquidated minimum wage damages under the NYLL; $4,000 for spread of hours damages, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs, for a total of $50,000. In other words, the plaintiffs collectively would have been owed about $152,000.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $100,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final settlement amount is less than plaintiffs' maximum possible recovery according to their calculations, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of their claims and the risks attendant with continuing the litigation.

Defendants generally denied plaintiffs' allegations about their work schedules, as well as the tenure of their employment with defendants, and produced some handwritten time sheets that purported to reflect fewer hours worked than plaintiffs claimed – generally 40-45 hours per week. This initial production only represented a portion of plaintiffs' tenure with defendants, but if believed, and if they were deemed to reflect their work schedules throughout his employment, they would be owed significantly less money — just a few thousand dollars each, most likely. And defendants of course denied having retaliated against Mr. Argueta Palma for asserting his rights under the FLSA or NYLL.

Plaintiffs did not have any time records of their own, and their calculations were based solely on their own recollections about their work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of sufficient time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. But in this case, defendants did maintain some pay records, and so plaintiffs would have had to overcome the hurdle of convincing a fact-finder that these records were inaccurate. In any case, it would have been a disputed fact question, with little possibility of resolving the case short of trial.

By agreeing to settle at this juncture, plaintiffs were able to gain a significant percentage of the damages they were potentially owed, without the delay of waiting for trial or the risks attendant with trial. Thus, they decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is 65% of plaintiffs' maximum possible recovery by their own calculations (and far more than their maximum possible FLSA recovery of $18,000). And even after attorneys' fees, plaintiffs will be receiving complete recovery of their claimed actual and liquidated FLSA damages. They will receive these funds without running any risk or having to prove his claims.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert*

*v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, a substantial portion of the money is payable up front, and plaintiffs are protected by a confession of judgment for 200% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $613.60 (filing fee and service of process)[1] and will retain 1/3 of the net settlement (i.e., an additional $33,128.80) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v.*

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process are attached as Exhibit C.

*New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

This figure represents a figure of roughly 2.9 times our lodestar (described below). While that is on the higher end of multipliers in FLSA contingency litigation, it is within the range of that which is approved. *See, e.g., Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving a 5.23 multiplier in an FLSA case); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six"); *Riveras v. Bilboa Rest. Corp.*, 17-cv-4430 (LTS)(S.D.N.Y., Dec. 14, 2018)(approving 6.7 multiplier); *Campos et al. v. Midtown Auto Care Service*, 18-cv-4936 (BCM)(S.D.N.Y., May 21, 2019)(approving 3.59 multiplier).

Moreover, to reduce the near-standard one-third contingency fee merely because it represented a significant multiplier over lodestar would penalize counsel for litigating the case efficiently. We could have increased our lodestar in this case (and thus reduced the multiplier) by refusing to enter into settlement negotiations when we did; this case settled as discovery was in its early stages, and plaintiffs were preparing to move for collective certification. Proceding with those steps rather than accepting defendants' offer would have been litigating the case more for the purpose of earning attorneys' fees than for the benefit of the plaintiffs. *See, e.g., Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v. County. of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010)) (holding that the percentage method is appropriate because it "avoids the lodestar method's potential to 'create a disincentive to early settlement.'") And in thjs case, the degree of success achieved by plaintiffs was high.

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $425 | 11.80 | $4,813.75 |
| David Nieporent | Senior Associate | $325 | 20.40 | $6,630.00 |
| **TOTAL** | | | **32.20** | **$11,443.75** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125.

I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation").

And, indeed, we have been awarded fees close to the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc.*, et al., 2019 WL 76706 (January 2, 2019); and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020)  And in the Eastern District, where the rates are a bit lower, we have been awarded comparable fees; for example, Judge D'Arcy Hall recently awarded us fees at a rate of $400 and $325. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We

hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                      Respectfully submitted,

                                      David Stein

Enc.

cc: Zev Singer, Esq. (via ECF)